```
                UNITED STATES DISTRICT COURT
              FOR THE EASTERN DISTRICT OF VIRGINIA
                        Norfolk Division
```

**MICHAEL A. SWARN,**

        **Plaintiff,**

**v.**                                                      **2:04CV403**

**ROY CHERRY, SUPERINTENDENT**

**and**

**C/O WILLIAMSON, CORRECTIONAL**
**OFFICER,**

        **Defendants.**

## OPINION AND ORDER

This matter is before the Court on defendants' motion for summary judgment. For the reasons which follow, the motion is GRANTED.

### I. STATEMENT OF THE CASE

#### A. Background

On July 23, 2003, plaintiff was incarcerated in the Hampton Roads Regional Jail (HRRJ), as a pretrial detainee for possession of controlled substances. Plaintiff is a vegetarian. On the day in question, he received his lunch tray but was not satisfied with the food. Plaintiff told Officer Gary Williamson that he wanted the tray corrected, refusing to accept the tray. (Tr. at 55-56.) Plaintiff testified that he wanted to file an emergency grievance, which Williamson refused to accept, even though plaintiff had the grievance form completed and in his cell. (Tr. at 56-57.) According to plaintiff, Williamson took the grievance form and threw it on the floor, indicating that he would do nothing on plaintiff's behalf at that time because he was still serving food to the other prisoners. (Tr. at 48.)

At the time, plaintiff had his arm sticking out of the tray slot in the cell door and refused to remove the arm, even though Williamson asked him to do so two to three times. (Tr. at 123.) In order to continue serving the other prisoners, Williamson put a wrist lock on plaintiff's arm and against plaintiff's resistence, forced plaintiff's arm back through the slot and into the cell. (Tr. at 123; 140-42.)

Plaintiff claims that Williamson's conduct resulted in bodily injury to his hand, arm, and underarm and resulted in "a bone protruding out of [plaintiff's] forearm, which [would] require extensive surgery and prolonged therapy." (Compl. at 4.) Plaintiff asserts that he was subjected to medical indifference since no x-rays were taken until two weeks later. (Id.)

Plaintiff further asserts that he "will need surgery and therapy, and . . . more than likely be permanently disabled and unable to work any manual job." (Compl. at 4-1.) In his complaint, plaintiff seeks compensatory damages in the sum of Five Hundred Thousand Dollars ($500,000.00), and punitive damages in the sum of Five Hundred Thousand Dollars ($500,000.00).

Defendants filed an answer denying plaintiff's claims and asserting that plaintiff has failed to state facts sufficient to support a claim. In addition, Cherry filed a motion to dismiss, relying upon the language of Monell v. Dept. of Social Servs., 436 U.S. 685, 694 (1978), which provides that 42 U.S.C. § 1983, will not support a claim founded upon the doctrine of respondeat superior.

Plaintiff filed a response to the motion to dismiss, asserting that Cherry is responsible for hiring and training his officers, although

2

no facts are argued in support of the position that Cherry failed to perform any of his responsibilities as the superintendent.

All parties consented to trial by a Magistrate Judge, following which defendants filed motions for summary judgment. On February 7, 2005, the District Court referred the matter to the undersigned for disposition. A hearing was granted on the summary judgment motion, and the matter was heard on June 28, 2005.

### B. Issues Presented

1. Does Cherry have any liability?

2. Was plaintiff injured by Williamson's conduct?

3. Did Williamson use excessive force in dealing with plaintiff?

## II. FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A. Motion for Summary Judgment Standard

As set forth in Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate when the moving party can show by affidavits, depositions, admissions, answers to interrogatories, the pleadings, or other evidence, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." F̲E̲D̲.R.C̲I̲V̲.P. 56(c). Rule 56 mandates entry of summary judgment against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The moving party is not entitled to summary judgment if there is a genuine issue of material fact in dispute. See Anderson v. Liberty

3

Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue of fact exists if a reasonable jury could return a verdict for a nonmoving party. See id In other words, summary judgment appropriately lies only if there can be but one reasonable conclusion as to the verdict. See id.

Finally, as the Fourth Circuit explained,

> [w]e must draw any permissible inference from the underlying facts in the light most favorable to the party opposing the motion. Summary judgment is appropriate only where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, such as where the non-moving party has failed to make a sufficient showing on an essential element of the case that the non-moving party has the burden to prove.

Tuck v. Henkel Corp., 973 F.2d 371, 374 (4th Cir. 1992)(citations omitted).

### B. Superintendent Cherry is not Liable.

Cherry is the superintendent of the HRRJ, a state established regional facility designed to take the overflow of inmates from several municipalities in the Commonwealth of Virginia. The healthcare which is available at HRRJ is provided by Prison Health Services, Inc. (PHS), a privately owned corporation. Cherry exercises control over the prison facility, including PHS.

The complaint fails to attribute to Cherry any conduct which would permit a finding that he is liable to plaintiff under the provisions of 42 U.S.C. § 1983. While HRRJ may act in an unconstitutional manner if it "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," nevertheless,

> the language of § 1983, read against the background of the same legislative history compels the conclusion that Congress did not intend municipalities to be held liable unless action

4

> pursuant to official municipal policy of some nature caused a constitutional tort. In particular, we conclude that a municipality cannot be held liable <u>solely</u> because it employs a tortfeasor --or, in other words, a municipality cannot be held liable under § 1983 on a <u>respondeat superior</u> theory.

<u>Monel</u>, 436 U.S. at 690-91; <u>see also</u> <u>Oliver v Powell</u>, 250 F.Supp.2d 593, 598 (E.D. Va. 2002. <u>Monel</u> remains the law today.

Plaintiff alleges that "Cherry is responsible for the fact that he is the chief officer here at HRRJ. Mr. Cherry is responsible for the hire and proper training of his officers." (Br. in Resp. to Mot. to Dismiss at 3.)  Plaintiff referred to a HRRJ inmate handbook which sets forth certain rights of prisoners and asserts that because Cherry has adopted and enforced the handbook for use in the jail, that such an act confers upon him liability.

The precise opposite is true.  There is no evidence in the testimony or in any of the affidavits that remotely suggests that Cherry has implemented or approved any policy or doctrine that would tolerate the excessive use of force against a prisoner, or that would permit or condone the neglect of treatment of injuries received by an inmate.  The Court is asked to infer by virtue of his position Cherry's liability, but that is not the law, and there is no evidence to support such a result.

Plaintiff has the burden of showing that "prisoners face a pervasive and unreasonable risk from some specified source [and that] the supervisor's corrective inaction amounts to deliberate indifference . . ." <u>Oliver</u>, 250 F.Supp.2d at 599 (quoting <u>Slakan v. Porter</u>, 737 F.2d 368, 373 (4th Cir. 1984).  The burden cannot be met by a single incident. <u>Id.</u> In fact, even "proof of a single incident of . . . unconstitutional activity is not sufficient to prove the existence of a municipal custom."

5

<u>Simms ex rel Simms v. Hardesty</u>, 303 F.Supp.2d 656, 671 (D. Md. 2003). Instead, there must be proof of "widespread and pervasive abuses," none of which is present in the case before the Court.  <u>Id.</u>

Finally, it must be remembered that the Cherry has the ultimate responsibility for keeping order in the prison. Order is maintained through the guards who work for Cherry. It is important to remember that Williamson was disciplined for not calling his supervisor to assist in the resolution of the dispute with plaintiff. A letter in his personnel file and a three-day suspension reflect the seriousness with which the conduct of the guards is, and in Williamson's case, was viewed.

### C.  Plaintiff was Neither Subjected to Excessive Force nor Serious Injury.

Defendants correctly state that "a prisoner must bear in mind that the law does not convert every potentially tortuous act into a depravation of constitutional rights simply because the alleged tortfeasor happens to be a government actor." (Br. in Support of Mot. for Summ. J. at 6 (citing <u>Wagner v. Wheeler</u>, 13 F.3d 86, 92 (4th Cir. 1993)); <u>see also</u> <u>Robles v. Prince George County</u>, 302 F.3d 252, 271 (4th Cir. 2000). That proposition is essential to the ultimate ruling in this case.

Plaintiff testified that "Williamson crept down the side of the wall and grabbed [his] arm and just started going off on it, twisting it." (Tr. at 58.) Plaintiff went on to state, "I said I need to go to medical." (Tr. at 59.) However, on direct examination, plaintiff also admitted that his arm was not broken; it was swollen.  (Tr. at 64.)

6

Plaintiff's testimony was corroborated, in part, by two other inmates, Vernon Bellamy and Jurel Martinez Barreto.

Bellamy testified that he was in the cell next to plaintiff and that plaintiff complained about his lunch tray and refused to let Williamson close the tray slot, refusing to remove his arm from the slot. (Tr. at 12.)  Bellamy stated, "Williamson start [sic] beating on [plaintiff's] arm, slamming his arm in the slot, hitting his arm with his fist.  He went off, had a temper tantrum. . . . And then when -- [plaintiff], he was so much pressure was going on [plaintiff's] arm, [plaintiff] couldn't take it no more, he slammed the slot."  (Id.)  At the time, Bellamy was in custody for a probation violation for robbery and use of a firearm.  (Tr. at 18.)

Barreto, who was in a four-man cell which permitted him to see outside of the cell, candidly admitted that he did not see everything that occurred.  (Tr. at 23-24.)  However, he did see Williamson grab plaintiff's arm and tug the arm back and forth.  (Tr. at 24.)  Barreto stated that he was not aware of the dispute between plaintiff and Williamson.  (Tr. at 26, 28.)  More importantly, he could not see any injury to plaintiff and admitted that he did not know whether plaintiff was injured. (Tr. at 30-31.)  Barreto is currently incarcerated at Greensville Correctional Center on a possession of narcotics violation.

Plaintiff's witnesses were followed by the testimony of Richard Allen Lassiter, a corrections officer at HRRJ on July 23, 2003, who took plaintiff to medical.  Lassiter confirmed that plaintiff had bruises on the top of his arm, but there was no broken skin and no bone protruding out of his forearm.  (Tr. at 37.)

7

At this point, it is appropriate to note that Williamson did not disagree significantly with the testimony of plaintiff, Bellamy, or Barreto. In his defense, Williamson testified that after he asked plaintiff "two, three times to remove his arm from the tray slot," he "decided [he] was going to put a wrist lock on [plaintiff's] arm and try and put his arm back in the tray slot so [he] could lock the tray slot and continue on because [plaintiff] was disrupting the operation at that time." (Tr. at 123.) Williamson asserted that he put a wrist lock on plaintiff's right arm and, with some difficulty, was able to push his arm back into the tray slot and with his foot, close the tray slot. He acknowledged that he learned the wrist lock procedure during in-service training. (Tr. at 123.) Williamson testified that he had had no prior contact with plaintiff before July 23, 2003, and confirmed that plaintiff was in a segregation cell for disciplinary reasons. (Tr. at 116-17.) Williamson further testified that plaintiff "was actually disobeying a direct order. . . . He was . . . not being in compliance with a routine that was going on. He was keeping me from performing my duty." (Tr. at 124.) It is important to note that plaintiff was not written up for the incident, though he could have been, but Williamson received a letter in his personnel file for failing to call his supervisor when the incident occurred and a three-day suspension. (Tr. at 124-25, 127.)

Recognizing that "the management of a single truculent individual may cause difficulties for a custodian . . . ," claims of excessive force have given rise to certain principles in the assessment of all such claims, the most important of which is the principle that "[n]ot . . . every malevolent touch by a prison guard gives rise to a federal cause of action." Riley v. Dorton, 115 F.3d 1159, 1167 (4th Cir.

8

1997)(quoting <u>Johnson v. Glick</u>, 481 F.2d 1028, 1033 (2d Cir. 1973) and <u>Hudson v. McMillen</u>, 503 U.S. 1, 9 (1992)). In short, "an injury need not be severe or permanent to be actionable under the Eighth Amendment, but it must be more than <u>di minimis</u>." <u>Riley</u>, <u>id.</u>; <u>see also</u> <u>Stanley v. Hejirika</u>, 134 F.3d 629, 634 (4th Cir. 1998); <u>Norman v. Taylor</u>, 25 F.3d 1259 (4th Cir. 1994); <u>Marshal v. Odem</u>, 156 F.Supp.2d 525 (D. MD 2001).

Therefore, the Court must look to the injuries that plaintiff received, and in that regard, the record is clear. According to Wanda Carraway, a registered nurse employed at HRRJ on July 23, 2003, plaintiff "had marks on his arm and wrist . . . There were a couple of areas that the skin was broken but it was superficial." (Tr. at 41, 46, 49.) Plaintiff's wounds were treated and cleaned, but "there were no lacerations, and didn't appear to be any bones broken." (Tr. at 46.) Carraway went on to state that plaintiff "had full range of motion with his arm, his legs, and his fingers," and "he was treated with basic first aid and released." (Tr. at 47.)

Carraway's testimony was corroborated by Dr. Nsekenene Kolongo, a practitioner employed by PHS who saw plaintiff in September, 2003, when plaintiff complained that his right elbow was hurt. Kolongo testified that he saw no abnormalities and that plaintiff had a full range of motion in his arm. (Tr. at 75-76.) There was no evidence of injury, but Kolongo ordered an x-ray of plaintiff's elbow, which revealed that plaintiff had some spurring, a degenerative change not a traumatic change. (Tr. at 76-77.) Subsequent to September, 2003, Kolongo saw plaintiff in May, 2004, when he again complained about his elbow, and in June, 2004, when plaintiff fractured his left thumb playing basketball. (Tr. at 79-80.) Kolongo admitted prescribing Motrin for plaintiff's

9

elbow pain. (Tr. at 81.) Of significance is the fact that x-rays taken in September, 2003, contained no evidence of injury to plaintiff's right elbow or right arm and no evidence of fracture. (Tr. at 87.)

Dr. Edward Gold, an orthopaedic physician, reviewed plaintiff's medical records and the x-ray ordered by Kolongo. Gold determined that plaintiff suffered from bruises, abrasions, and superficial breaks in the skin of his arm, all of which had healed. (Tr. at 92-93.) The records revealed that plaintiff was able to move his elbow normally, and nothing in the record revealed that plaintiff had complained of a bone protruding from his elbow. (Tr. at 93.) Also, there was no information in the records suggesting that plaintiff needed surgery, of any type, or physical therapy. The record does show that plaintiff sustained another injury at a later time. (Tr. at 94.) Gold addressed the issue of bone spurs, confirming Kolongo's testimony that bone spurs are not traumatically caused and noting that age increases incidents of spurring. (Tr. at 95.) When asked directly by the Court, Gold noted that there was no evidence of any condition that would prevent plaintiff from working, playing basketball, or doing other things he wanted to do. (Tr. at 98-99.)

There is no question that plaintiff's injuries were <u>di minimis</u>. In the absence of injuries which are more than <u>di minimis</u>, plaintiff may not recover in the Fourth Circuit on an excessive force claim. <u>Riley v. Dorton</u>, 115 F.3d 1159, 1167 (4th Cir. 1997)("[a]n injury need not be severe or permanent under the Eighth Amendment, but it must be more than <u>de minimis</u>.); <u>Norman v. Taylor</u>, 25 F.3d 1259, 1262 (4th Cir. 1994)(<u>de minimis</u> injury can serve as proof of <u>de minimis</u> force); <u>Marshall v. Odom</u>, 156 F.Supp.2d 525 (D. Md. 2001).

Finally, it is relevant to consider the reason force was used against plaintiff. The evidence adduced during the hearing was clear that the incident occurred while serving prisoners in a disciplinary pod at the HRRJ. Williamson was assisted by two inmates, but he was the only corrections officer involved in the serving process. Thus, plaintiff's conduct, in refusing to remove his arm from the tray slot, hollering and screaming at Williamson, and creating a disruption resulting in his ordering Williamson to take his tray back to the kitchen, created an environment in which undesired results could have occurred. Williamson was not required to ignore plaintiff's behavior, nor should he have ignored his behavior. The uncontradicted testimony reveals that Williamson addressed plaintiff's disobedience and disruptive behavior and restored order to the pod. There were other inmates to be fed.

Courts recognize that prisons are dangerous places and correctional officers must be accorded wide-ranging deference in the design and practice of security measures. Stanley, 134 F.3d at 634. Recognizing the continuing nature of the problem, courts must balance claims of excessive force against the need to restore order when a disturbance breaks out. Any perceived threat must receive an appropriate response, understanding that the word "appropriate" has both and objective and a subjective component. Williams v. Benjamin, 77 F.3d 756 (4th Cir. 1996). Finally, whatever force is used, it must be appropriate to the circumstances. Marshall, 156 F.Supp.2d at 529. Williamson passes the test.

Neither Bellamy nor Barreto were able to contradict Williamson's testimony regarding the circumstances that he faced. Bellamy, who was in the cell next to plaintiff, and more accustomed to

11

talking to plaintiff, gave testimony that may be viewed, if credible, as more strongly in plaintiff's favor. However, Bellamy was not a particularly credible witness. On the other hand, Barreto, who was credible, acknowledged that he was far enough away that he could not see everything, that he did not hear the entire conversation, and that he did not know all of the circumstances. Instead, he testified to what he saw Williamson do in the hallway.

Williamson was left in the untenable position of having to resolve a circumstance he did not create, in way that would allow him to perform his other duties. Plaintiff was out of line, disruptive, and disobedient. the force used against him was brief, had a limited and proper purpose, and achieved what Williamson sought to accomplish. Williamson brought a bad situation under control in a minimal amount of time and without any additional problems. In a prison setting involving an inmate who is a disciplinary problem, that is all that is expected.

### III. CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is GRANTED.

                                                **/s/**
                                      **James E. Bradberry**
                                      **United States Magistrate Judge**

**Norfolk, Virginia**

**August 24, 2005**